UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DONA AMARASEKERA
                             Plaintiff,

                vs.

JONES APPAREL GROUP, INC.,

                             Defendants.
------------------------------------------------------------------X

Case No.:

COMPLAINT

JURY TRIAL DEMANDED

RECEIVED DEC 21 2005 U.S.D.C. S.D. N.Y. CASHIERS

Plaintiff, Dona Amarasekera, as and for her complaint, hereby alleges as follows:

## INTRODUCTION

1.    In the instant action, Plaintiff alleges that she was subject to discrimination by her employer with respect to the compensation, terms, conditions, and privileges of her employment because of her gender. Plaintiff alleges that over the course of nearly three years, the Defendant subjected her to a hostile work environment that was permeated with discriminatory intimidation, ridicule, and insult so severe and pervasive that it created an abusive working environment and altered the terms and conditions of her employment. Plaintiff alleges that she made continuous complaints to the Defendant to remedy the hostile work environment, that her complaints were ignored by the Defendant, and that she was discharged by the Defendant in retaliation for her complaints of sexual harassment. Plaintiff alleges that the conduct of the Defendant violated Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981(a)(1). Plaintiff alleges that the Defendant company conspired with its officers, managers, and supervisors to deprive the Plaintiff of equal protection of the laws and equal privileges and immunities under the law in violation of 42 U.S.C. § 1985(3). Plaintiff further alleges that the Defendant violated her rights under New York Human Rights Law § 296, and that the Defendant interfered with her rights in violation of the common law of the State of New York.

## THE PARTIES

2.    The Plaintiff, Dona Amarasekera, was formerly employed as a production pattern maker for the Defendant company, Jones Apparel Group, Inc.

3.    The Defendant, Jones Apparel Group Inc., is one of the largest makers of garments in New York City, with places of business at 1411 Broadway, New York, NY 10018;

111 West 40th Street, New York. NY 10018; and 115 5th Avenue, New York, NY 10003. 725 7th Avenue, New York. NY.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367(a).

5. On or about October 14, 2005, the Plaintiff received a Right to Sue Notice from the United States Equal Opportunity Commission.

6. Pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), venue in the Southern District of New York is appropriate because a substantial portion of the events giving rise to Plaintiff's claims occurred in the Southern District and the Defendant resides in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. Plaintiff, a Sri Lankan female, was hired by the Defendant, Jones Apparel Group, Inc., in April 2002 to work as a patternmaker.

8. From April 2002 to March 2005, the Plaintiff performed her job at a satisfactory level, having worked in the garment industry for twenty-three years, with a high level of vocational and academic qualification for her job.

9. From June 2002 to September 2004, Plaintiff's supervisor was Sal Russo, a managing officer of the Defendant company. Sal Russo directly monitored, evaluated, and instructed the Plaintiff in the daily course of her job.

10. Beginning in or about June 2002, Sal Russo intentionally singled out the Plaintiff for harassing, hostile, degrading, and humiliating treatment of an invidious nature because of Plaintiff's gender and race.

11. From June to November 2002. Russo, regularly made harassing, degrading, and sexually suggestive comments to the Plaintiff in the presence of co-workers. calling her "pretty." "sweetie." and "darling." He would wink suggestively at the Plaintiff in a sexual manner. During that time, Russo repeatedly asked the Plaintiff to accompany him on dates outside work. This conduct caused the Plaintiff daily discomfort, anxiety, and embarrassment in the workplace.

12. In or about August 2002. Mr. Russo intentionally brushed his body up against the Plaintiff's body and rubbed the Plaintiff's chest in a sexual manner. The Plaintiff crossed her arms over her chest to avoid further touching. As a result of Russo's unwanted touching, Plaintiff suffered humiliation, embarrassment and psychological harm.

13. Finding it difficult to perform her work because of the hostile work environment created by Russo, Plaintiff sought the intervention of the Defendant company's human resource department (hereinafter "human resources"). On or about November 28, 2002, Plaintiff wrote a letter to Yvette Miller, a human resources manager at Jones Apparel Group, Inc. In the letter, Plaintiff informed Ms. Miller of Russo's frequent, harassing conduct. Ms. Miller discussed the matter with the Plaintiff but took no action to investigate or remedy the situation.

14. Upon information and belief, Ms. Miller subsequently informed Russo of Plaintiff's complaint. Plaintiff noticed that Russo became very agitated after he learned that Plaintiff complained to human resources about his harassing conduct. Plaintiff noticed that her complaint increased Russo's resolve to single out the plaintiff for sexual harassment and discrimination.

15. In retaliation for Plaintiff's complaint, Russo, on a daily basis, would ridicule and castigate the Plaintiff in front of coworkers. Russo would often become unusually angry at the Plaintiff, screaming at her in front of coworkers, at times causing the Plaintiff to cry and shiver.

16. In December 2003, Plaintiff began treatment with a doctor for physical and emotional symptoms related to the hostile work environment at Jones Apparel Group. Plaintiff's doctor prescribed anti-anxiety medication to treat Plaintiff's constant feeling of dizziness, panic, nervousness, and weakness while at work.

17. On or about December 17, 2002, Plaintiff contacted Aida Tejero-DeColli, vice president of human resources for Jones Apparel Group. In a letter, Plaintiff notified Mrs. Tejero-DeColli of Russo's continually hostile, discriminatory, and harassing conduct.

18. On or about December 19, 2002, Plaintiff had a telephone conference with human resources in the office of Yvette Miller. During the conference, another human resource manager, Collin Murphy, told Plaintiff that human resources would look into the harassing conduct of Sal Russo.

19. In fact, no action was taken by Miller, Murphy, or Jones Apparel Group after the conference. Instead, Russo continued to harass, berate, and degrade the Plaintiff in retaliation for her complaints to human resources.

20. On or about February 17, 2003, Plaintiff wrote another letter to human resources, addressed to Yvette Miller, complaining of the extremely hostile work environment created by Russo's harassing and discriminatory conduct.

21. At a meeting with human resources on or about February 27, 2003, Plaintiff told Miller and Murphy that Russo had tried touching Plaintiff in a sexual manner on a number of occasions. Plaintiff then demonstrated for Miller and Murphy where on her body Russo tried touching her. Plaintiff reiterated that Russo continued calling her "sweetie" and "darling," despite previous assurances from human resources that Russo would be made to stop his harassing conduct.

22. On or about March 27, 2003, Plaintiff was assured, again, by Yvette Miller that human resources would ask Russo to stop calling Plaintiff darling. Again, however, nothing was done by human resources to address Plaintiff's complaints about Russo's inappropriate touching, yelling, and other harassing conduct.

23. As a result of the inaction by human resources, Russo retaliated against the Plaintiff with even more severe acts of harassment. On or about April 3, 2003, Russo verbally castigated the Plaintiff in front of other coworkers while Plaintiff was working on a pattern design. Russo screamed at the Plaintiff for not cutting fabric to Russo's specifications, accusing the Plaintiff of competency.

24. The incident caused the Plaintiff to cry and shiver out fear, anxiety, and humiliation. Plaintiff reported the incident to another supervisor, Cathy McShane, who told the Plaintiff that Russo had acted unreasonably and that human resources would investigate Russo's treatment of the Plaintiff. Nothing was done by the Defendant company, however, to investigate or address Russo's invidious, harassing, and hostile discrimination.

25. By April 2003, Russo's abusive conduct began to affect severely the Plaintiff's ability to work. Plaintiff complained of Russo's harassing conduct to the head of her department, Lou Borella.. Lou Borella, however, brushed aside Plaintiff's complaints, defending Russo and questioning whether Plaintiff was a "team player."

26. Nothing was done by Mr. Borella to address or rectify the ongoing harassment of the Plaintiff by Russo. Instead, Russo again retaliated with even more severe acts of harassment. In April 2003, Russo cornered the Plaintiff at a copy machine and began wrapping his hands around her wrists. Russo made sexual advances at the Plaintiff, but the Plaintiff removed Russo's hands and told him she did not want to be touched. Russo began taunting the Plaintiff for rejecting his advances. Plaintiff left the incident humiliated, in a state of extreme anxiety and emotional distress.

27. The Plaintiff wrote two more letters to human resources in April 2003, complaining of Russo's sexual touching and other harassing conduct. The Plaintiff's letters were once again ignored by the human resources department at Jones Apparel Group.

28. In April 2003, the Plaintiff's physical symptoms worsened as a result of the hostile and abusive work environment at Jones Apparel Group. Plaintiff's doctor noted that Plaintiff's complexion was pale and that she seemed more anxious than ever. Plaintiff experienced trouble speaking due to her anxiety. Plaintiff's doctor could no longer alleviate Plaintiff's anxiety, so Plaintiff began seeing a psychiatrist.

29. Only with medication and treatment by a psychiatrist was Plaintiff able to continue working at Jones Apparel Group from April to August 2003. During that time, Plaintiff continued to suffer daily hostility, discrimination, and abuse at Jones Apparel Group, Inc. Despite numerous complaints to officers and managers of the Defendant company, nothing was done to address the discriminatory and harassing treatment of the Plaintiff.

30. In the absence of diligent efforts by the Defendant to investigate, supervise, and remedy Russo's conduct, Russo continued his discriminatory and harassing treatment of the Plaintiff. On or about the morning of August 27, 2003, Russo watched the Plaintiff enter work, commented that she had nice pants and "a great body." The incident made the Plaintiff feel that she was physically unsafe at work, knowing that Russo had previously put his hands on the Plaintiff and lusted after her sexually.

31. In September 2003, Russo began increasing the Plaintiff's workload beyond previous levels, to a degree that was burdensome and disproportionate to the workload of other workers in Plaintiff's department. This discriminatory conduct caused the Plaintiff to suffer from physical exhaustion. On or about September 30, 2003, the Plaintiff collapsed in a stairwell at home as a result of physical exhaustion caused by the discriminatory and hostile work environment at Jones Apparel Group.

32. Plaintiff continued to suffer persistent harassment at Jones Apparel Group through October 2003. In October 2003, Plaintiff's department director, Lou Borella, began taking hostile, adverse, and retaliatory action against the Plaintiff because of her numerous complaints to human resources about Russo's discriminatory and sexually harassing conduct.

33. On or about October 16, 2003, Borella accused the Plaintiff of not working fast enough despite her already overwhelming work load. Borella also accused the Plaintiff of

general professional incompetence. When Plaintiff tried defending her professional reputation, Borella told her that she needed to be "one of us," implying that she was not a "team player." Borella did nothing to investigate or remedy Russo's discriminatory treatment of the plaintiff. Instead, Borella retaliated against the Plaintiff for her complaints about the hostile and abusive working conditions at Jones Apparel Group, aiding and abetting Russo in his sexual harassment and discrimination of the Plaintiff.

34. On or about October 20, 2003, Plaintiff wrote a detailed letter to Yvette Miller and Christine Garafola, human resource managers of the Defendant company. Plaintiff informed Ms. Miller and Ms. Garafola of Borella's increasingly hostile and discriminatory treatment of the Plaintiff. Plaintiff asked why human resources was doing nothing to address her complaints.

35. On or about November 17, 2003, Yvette Miller called the Plaintiff into a meeting with human resources. Ms. Miller listened to the Plaintiff's complaints and stated that she would speak to Lou Borella. Human resources, however, took no action following the meeting.

36. In retaliation for Plaintiff's complaint, Borella and Russo increased Plaintiff's workload beyond previous levels, to a degree that was highly disproportionate to the workload of Plaintiff's coworkers. In addition to giving the Plaintiff an unreasonable and burdensome amount of work, Plaintiff was required to start keeping detailed daily logs of her work progress. When Plaintiff complained to the Defendant company that she was never required to perform such tasks in the past, she was again ignored.

37. On or about November 21, 2003, Russo came to work after watching a movie that involved issues of sexual harassment. Russo made comments to the Plaintiff and other employees to the effect that sexual harassment laws were ridiculous. Russo stated that such laws made it difficult for employers to "joke" with female coworkers. Russo then stated that such laws did not permit employers to tell female employees that they had "nice pants," alluding to the harassing comment Russo had made to the Plaintiff on or about August 27, 2003. This caused the Plaintiff to feel as though she was once again being singled out for her complaints of sexual harassment, in a manner that was humiliating and embarrassing.

38. From December 2003 to August 2004, Borella and Russo continued their harassment of the plaintiff, making comments of a sexual nature during fittings and generally ridiculing the Plaintiff for incompetence.

39. The inaction of the Defendant company in the face of plaintiff's numerous complaints confirmed Plaintiff's suspicion that there was a culture at Jones Apparel Group that overlooked and supported sexually harassing conduct. Plaintiff's complaints to human resources were deliberately ignored. Human resources failed to undertake efforts to investigate, monitor, or remedy hostile and discriminatory working conditions at the company.

40. Without intervention by human resources, Borella and Russo continued to harass and discriminate against the Plaintiff. On or about August 24, 2004, Borella refused to approve Plaintiff's request for tuition reimbursement so that the Plaintiff could attend a continuing professional education course. Plaintiff's request was denied by Borella, even though Borella approved similar requests from other employees in Plaintiff's department.

41. The Plaintiff tried reporting Borella's discriminatory conduct to human resources. She was shocked when Collin Murphy, a human resource manager, suggested that Plaintiff quit her job if she did not like the way she was being treated at work. Ms. Murphy effectively told the Plaintiff that her complaints to the human resources were a waste of time since nothing would really be done to address Plaintiff's concerns, no matter how many letters Plaintiff wrote.

42. Without intervention by human resources, Plaintiff continued to suffer harassment and discrimination through September 2004. On or about September 23, 2004, Sal Russo left Plaintiff's department to work in another department. The Defendant company replaced Russo with new supervisors who began assisting Borella in his discriminatory and harassing treatment of the Plaintiff.

43. In September 2004, Heidi Shin and Michael Morales became Plaintiff's new supervisors. The new supervisors were eager to please department head, Lou Borella, and carried out his instructions to discriminate against and harass the Plaintiff in retaliation Plaintiff's history of complaints to human resources.

44. In September 2004, Plaintiff began to suspect that her supervisors were conspiring to wrongfully terminate Plaintiff's employment at Jones Apparel Group.

45. In September 2004, Shin further increased Plaintiff's already exhausting workload. Additionally, Shin began requiring that the Plaintiff use new and unfamiliar procedures for producing garment patterns, in order to impede the Plaintiff's work performance and create the impression that Plaintiff was an incompetent worker.

46. On or about October 25, 2004, Plaintiff notified Yvette Miller of human resources that Heidi Shin was helping Lou Borella harass and discriminate against the Plaintiff, perpetuating the hostile and discriminatory environment in which the Plaintiff worked. Plaintiff's complaint was again ignored by human resources.

47. On or about December 8, 2004, Plaintiff made yet another complaint to human resources, notifying Yvette Miller of Ms. Shin's ongoing harassment. The Plaintiff informed Yvette Miller that Ms. Shin and Mr. Morales had refused to give the Plaintiff time off to participate in a Sri-Lankan religious ceremony commemorating the death of the Plaintiff's father, even though other employees routinely received time off in similar situations. Plaintiff told Ms. Miller that she believed her supervisors were discriminating against her because of Plaintiff's previous sexual harassment complaints.

48. Plaintiff's complaint was again ignored by human resources. As a result of missing the ceremony commemorating her father's death, Plaintiff suffered from emotional distress, sadness, and depression.

49. From December 2004 to March 2005, Borella, Shin, and Morales continued their discrimination and harassment of the Plaintiff. In March 2005, Plaintiff returned from a trip to her home country of Sri Lanka. Upon Plaintiff's return to work, Ms. Shin insulted the Plaintiff's country of origin in front of other co-workers. Ms. Shin stated that she had visited Sri Lanka, saying, "There are some awful places and awful people there." The comment was made with racial animus and caused the Plaintiff extreme pain, suffering, and emotional distress.

50. In March 2005, for the first time since being hired to work at Jones Apparel Group, Inc., Plaintiff began receiving poor employee performance review evaluations from her supervisors. It was clear to the Plaintiff that the poor reviews were the beginning of the end of her career at Jones Apparel Group, Inc.

51. Plaintiff complained to her supervisors that she was being held to work standards that were difficult if not impossible to meet. Her complaints were ignored, however, confirming to the Plaintiff that her supervisors had conspired to create a false pretext that the Plaintiff was incompetent, so that they could have the Plaintiff discharge from employment in retaliation for her previous complaints of discrimination and sexual harassment.

52. On or about March 26, 2004, Plaintiff complained to Yvette Miller of human resources that Heidi Shin and Mr. Morales were making her work environment uncomfortable

and difficult. Plaintiff stated that Heidi Shinn was falsely giving Plaintiff negative performance evaluations in order to have the Plaintiff fired.

53. Human resources took no action in response to Plaintiff's complaints. Instead, human resources held a meeting with the Plaintiff to investigate reasons why the Plaintiff was unable to meet her workload.

54. Without intervention by human resources, Defendants moved forward to terminate the Plaintiff's employment on the pretext that Plaintiff's work was unsatisfactory.

55. On April 27, 2005, Lou Borella called the Plaintiff into his office to terminate her employment. Mr. Borella stated that the reason for Plaintiff's termination was her poor work performance and general incompetence  The Plaintiff was upset and hurt by these statements because they were untrue and damaging to her reputation as a professional. Borella indicated that he had told other managers at Jones Apparel Group that the Plaintiff should be terminated because her work was not professional.

56. After her meeting with Borella, Plaintiff contacted the Defendant Yvette Miller of human resources to inquire about the reason for her termination. Ms. Miller informed the Plaintiff that human resources would send a letter to the Plaintiff's home detailing the reasons for Plaintiff's termination.

57. When Plaintiff received the letter from human resources, no reason was given for Plaintiff's termination.

58. In fact, the Defendants discharged the Plaintiff in retaliation for her complaints to human resources about sexual and racial harassment from Sal Russo, Lou Borella, Heidi Shin, and Michael Morales.

## AS AND FOR A FIRST CAUSE OF ACTION
## SEXUAL HARASSMENT – 42 U.S.C. § 2000e

59. The Plaintiff repeats the allegations contained in paragraphs 1 through 58 and incorporates them herein.

60. The Defendant invidiously discriminated against the Plaintiff during the term of Plaintiff's employment because of the Plaintiff's gender, subjecting the Plaintiff to a hostile and abusive work environment permeated with discriminatory intimidation, ridicule, and insult that was severe and pervasive.

61. For nearly three years, officers and supervisors of the Defendant company routinely and pervasively subjected Plaintiff to offensive sex-based remarks, disproportionately burdensome work assignments, work sabotage, and physical touching.

62. The discriminatory work environment created by the Defendant was unreasonably abusive and harsh, and it unreasonably interfered with the terms, conditions, and privileges of Plaintiff's employment.

63. On numerous occasions, the Plaintiff undertook diligent efforts to notify the Defendant company of ongoing discrimination, sexual harassment, and abusive working conditions during the term of her employment.

63. The Defendant company undertook no reasonable efforts to investigate, address, or remedy Plaintiff's numerous complaints of a discriminatory, abusive, and hostile work environment in violation of Title VII, 42 U.S.C. § 2000e.

64. Instead, the Defendant company terminated the Plaintiff's employment in retaliation for Plaintiff's numerous complaints of discrimination and sexual harassment at work, in violation of Title VII, 42 U.S.C. § 2000e.

65. As a result of the Defendant's violation of Title VII, the Plaintiff has lost back pay, front pay, benefits, and other economic damages. Plaintiff's damages exceed $150,000 exclusive of interest and costs.

WHEREFORE, the Plaintiff, Dona Amarasekera, demands judgment against the Defendant for economic damages, interests, statutory attorney's fees and costs of suit, and other relief which the court deems just and equitable.

## AS AND FOR A SECOND CAUSE OF ACTION
## DEPRIVATION OF EQUAL RIGHTS UNDER THE LAW – 42 U.S.C. § 1981(a)(1)

66. The Plaintiff repeats the allegations contained in paragraphs 1 through 65 and incorporates them herein.

67. The Defendant company intentionally and invidiously violated Title VII in violation of 42 U.S.C. § 1981(a)(1).

68. The Defendants discriminated against the Plaintiff with deliberate, invidious, malicious, and reckless indifference to her rights as guaranteed by Title VII.

69. As a result of the Defendant's violation of 42 U.S.C. § 1981(a)(1), the Plaintiff has suffered and will in the future suffer pecuniary losses, emotional distress, mental anguish,

humiliation, injury to her reputation and other non-pecuniary losses. Plaintiff's damages exceed $150,000 exclusive of interests and costs.

WHEREFORE, the Plaintiff, Dona Amarasekera, demands judgment against the Defendant for compensatory damages, punitive damages, statutory attorney's fees, costs of suit, and other relief which the court deems just and equitable.

### AS AND FOR A THIRD CAUSE OF ACTION
### CONSPIRACY TO DENY EQUAL PROTECTION OF THE LAWS – 42 U.S.C. 1985(3)

70. The Plaintiff repeats the allegations contained in paragraphs 1 through 69 and incorporates them herein.

71. The Defendant company conspired with its officers, managers, and supervisors to deprive the Plaintiff of equal protection of the laws and privileges and immunities under the law in violation of 42 U.S.C. § 1985(3).

78. Specifically, the Defendant conspired to disregard and ignore Plaintiff's numerous complaints of ongoing discrimination, sexual harassment, and abusive working conditions during the term of her employment. The Defendant then conspired to retaliate against the for Plaintiff's numerous complaints of discrimination and sexual harassment at work, in violation of Title VII, 42 U.S.C. § 2000e.

79. The Plaintiff's complaints of ongoing discrimination, sexual harassment, and abusive working conditions to the Defendant were protected activity under Title VII.

80. The Defendant's misconduct constitutes a violation of 42 U.S.C. § 1985(3).

81. As a result of the Defendant's violation of 42 U.S.C. § 1985(3), the Plaintiff has suffered and will in the future suffer pecuniary losses, emotional distress, mental anguish, humiliation, injury to her reputation and other non-pecuniary losses. Plaintiff's damages exceed $150,000 exclusive of interests and costs.

WHEREFORE, the Plaintiff, Dona Amarasekera, demands judgment against the Defendant for compensatory damages, punitive damages, statutory attorney's fees, costs of suit, and other relief which the court deems just and equitable.

### AS AND FOR A FOURTH CAUSE OF ACTION
### SEXUAL HARASSMENT – NEW YORK EXEC. LAW § 296(1)

82. The Plaintiff repeats the allegations contained in paragraphs 1 through 81 and incorporates them herein.

83. The Defendants invidiously discriminated against the Plaintiff during the term of Plaintiff's employment because of the Plaintiff's gender, subjecting the Plaintiff to a hostile and abusive work environment permeated with discriminatory intimidation, ridicule, and insult that was severe and pervasive.

84. For nearly three years, officers and supervisors of the Defendant company routinely and pervasively subjected Plaintiff to offensive sex-based remarks, disproportionately burdensome work assignments, work sabotage, and physical touching.

85. The discriminatory work environment created by the Defendant was unreasonably abusive and harsh, and it unreasonably interfered with the terms, conditions, and privileges of Plaintiff's employment.

86. On numerous occasions, the Plaintiff undertook diligent efforts to notify the Defendant company of ongoing discrimination, sexual harassment, and abusive working conditions during the term of her employment.

87. The Defendant company undertook no reasonable efforts to investigate, address, or remedy Plaintiff's numerous complaints of a discriminatory, abusive, and hostile work environment in violation of New York Exec. Law § 296(1).

88. Instead, the Defendant company terminated the Plaintiff's employment in retaliation for Plaintiff's numerous complaints of discrimination and sexual harassment at work, in violation of New York Exec. Law § 296(1).

89. As a result of the Defendant's violation of Title VII, the Plaintiff has lost back pay, front pay, benefits, and other economic damages. Plaintiff's damages exceed $150,000 exclusive of interest and costs.

WHEREFORE, the Plaintiff, Dona Amarasekera, demands judgment against the Defendant for economic damages, interests, statutory attorney's fees and costs of suit, and other relief which the court deems just and equitable

### AS AND FOR A FOURTH CAUSE OF ACTION
### NEGLIGENT SUPERVISION – NEW YORK LAW

90. The Plaintiff repeats the allegations contained in paragraphs 1 through 89 and incorporates them herein.

91. The Defendant had a duty of care to take reasonable action to prevent the Defendant's officers, managers, and supervisors from deliberately injuring the Plaintiff,

including injuries resulting from assault, battery, defamation, sexually harassment, and intentional infliction of emotion distress.

92. The Defendant had actual notice and a reasonable belief that the Plaintiff was being subject to discriminatory, hostile, harassing, and tortuous treatment by officers, managers, and supervisors of the Defendant company, in violation of the laws of the United States and the State of New York.

93. The Defendant breached its duty of care to the Plaintiff with reckless and negligent indifference for the Plaintiff's rights by taking unreasonable action to investigate, supervise, and remedy the wrongful conduct of officers, managers, and supervisors.

94. As a proximate cause of the Defendant's recklessness and negligence, the Plaintiff has suffered and will in the future suffer pecuniary losses, emotional distress, mental anguish, humiliation, injury to her reputation and other non-pecuniary losses. Plaintiff's damages exceed $150,000 exclusive of interests and costs.

WHEREFORE, the Plaintiff, Dona Amarasekera, demands judgment against the Defendant for compensatory damages, costs of suit, and other relief which the court deems just and equitable.

### AS AND FOR A FIFTH CAUSE OF ACTION
### DEFAMATION PER SE – NEW YORK LAW

95. The Plaintiff repeats the allegations contained in paragraphs 1 through 94 and incorporates them herein.

96. The Defendant, through its officers, managers, and supervisors, intentionally and maliciously published false statements about the Plaintiff to other officers, managers, and employees of the Defendant, stating that the Plaintiff was professionally incompetent.

97. The Defendant, through its officers, managers, and supervisors, intentionally and maliciously falsified the Plaintiff's employee evaluation reports, with the intention of causing the Plaintiff to be terminated from employment.

98. The Defendants caused the Plaintiff to be terminated from employment by falsely telling officers and managers of the Defendant that the Plaintiff was professionally incompetent.

99. The statements made by the Defendants were defamatory per se under the common law of New York, in that the statements and reports related to the Plaintiff's competency as a professional and injured her professional reputation.

100. The Defendants made these false statements about the Plaintiff with deliberate, malicious, and reckless indifference to the truth.

101. As a result of the defamatory acts of the Defendant, the Plaintiff has suffered and will in the future suffer pecuniary losses, emotional distress, mental anguish, humiliation, injury to her reputation and other non-pecuniary losses. Plaintiff's damages exceed $150,000 exclusive of interests and costs.

WHEREFORE, the Plaintiff, Dona Amarasekera, demands judgment against the Defendant for compensatory damages, punitive damages, statutory attorney's fees, costs of suit, and other relief which the court deems just and equitable.

### DEMAND FOR ATTORNEY'S FEES – 42 U.S.C. § 1988

102. Pursuant to 42 U.S.C. 1988, the Plaintiff demands attorney's fees and legal fees from the Defendant.

### JURY DEMAND

103. Plaintiff demands a trial by Jury. Joseph A. Episcopio is hereby designated as Plaintiff's trial counsel.

Dated: New York, New York
December 19, 2005

Respectfully Submitted,

By: _____
Joseph A. Episcopio
Attorney for Plaintiff
232 Madison Avenue, Suite 1200
New York, NY 10016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X   Docket #:
DONA AMARASEKERA
                Plaintiff.                          Case No: _____

                                                                                         CERTRTIFICATION

     -against-

JONES APPAREL GROUP, INC..

                Defendants.

------------------------------------------------------------X

Joseph Episcopio. Esq. being duly sworn. says:

    I am an attorney admitted to practice law before the courts of the State of New York and the United States District Court for the Southern District of New York. I am a member of the firm JOSEPH A. EPISCOPIO, P.C., the attorney of record for DONA AMARASKEKLERA, Plaintiff in the within action. I have read the contents of the foregoing Complaint and know the contents thereof; the same is true to my own knowledge. except as to those matters said to be upon information and belief and as to those matters, I believe them to be true. My belief as to all matters not stated upon my knowledge are as follows: file maintained by JOSEPH A. EPISCOPIO. P.C., and information supplied by the client. This verification is made by me because plaintiff resides in a county other than the county in which my office is located.

                                                                   _____
                                                                  Joseph A. Episcopio. Esq. (JE-3901)

Affirmed: December 19. 2005

Index No.   Year 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONA AMARASEKERA

    Plaintiff,
-Against-

JONES APPAREL GROUP, INC.,

    Defendants.

SUMMONS AND COMPLAINT

*Attorney for*

JOSEPH A. EPISCOPIO, P.C.
PLAINTIFF

232 MADISON AVENUE
SUITE 1200
NEW YORK, NEW YORK 10016
(212) 725-5554

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

Dated:............................   Signature..............................................................

            Print Signer's Name..................................................

*Service of a copy of the within*                   *is hereby admitted.*

Dated:

                *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐ NOTICE OF ENTRY
that the within is a (certified) true copy of a entered in the office of the clerk of the within named Court on  20

☐ NOTICE OF SETTLEMENT
that an Order of which the within is a true copy will be presented for settlement to the Hon.  one of the judges of the within named Court, at
on  20  , at  M.

Dated:

              JOSEPH A. EPISCOPIO, P.C.
      *Attorney for*      PLAINTIFF

              232 MADISON AVENUE
              SUITE 1200
              NEW YORK, NEW YORK 10016
To:               (212) 725-5554